UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DENISE C. BROCKETT,<br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner,<br>Social Security Administration,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CA 06-457 M |

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Denise C. Brockett ("Plaintiff") has filed a motion for summary judgment. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and is legally correct. Accordingly, based on the following analysis, I order that Defendant's Motion for an Order Affirming the Decision of

---

[1] Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d) (2008) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the name of the substituted party's name ....").

the Commissioner (Document ("Doc.") #6) ("Motion to Affirm") be granted and that Plaintiff's Motion for Summary Judgment (Doc. #5) ("Motion for Summary Judgment") be denied.

**Facts and Travel**

On December 8, 2004, Plaintiff filed an application for DIB, alleging disability since February 13, 2004, because of multiple chemical sensitivity, high cholesterol, digestive problems, upper respiratory problems, headaches, depression, borderline diabetes, arthritis, bad back, poor circulation, heart palpitations, and personality change. (Record ("R.") at 13, 89, 107-08) Her applications were denied initially, (R. at 76, 78-80), and upon reconsideration, (R. at 77, 82-84). Plaintiff requested an administrative hearing. (R. at 85) On April 5, 2006, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, and a vocational expert testified. (R. at 35-75) The ALJ issued a decision on June 5, 2006, finding that Plaintiff was not disabled. (R. at 13-24) The Appeals Council denied Plaintiff's request for review on August 18, 2006, (R. at 5-7), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 5). Plaintiff thereafter filed this action for judicial review.

**Issue**

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is legally correct.

**Standard of Review**

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial

evidence in the record,[2] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than sixty-five years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales).

[3] Plaintiff met the nondisability requirements set forth in Section 216(i) of the Social Security Act and was insured for disability benefits through September 30, 2006. (R. at 13)

which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A). A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4] 20 C.F.R. § 404.1521(a) (2008). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); see also 20 C.F.R. § 404.1528(a).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2008); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether

[4] Section 404.1521 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2008). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

her impairment meets or equals one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (R. at 23); that Plaintiff's anxiety disorder, obesity, obstructive sleep apnea, depression, asthma, and multiple chemical sensitivities were severe but not severe enough to meet or equal any listed impairment, (id.); that Plaintiff's allegations regarding her limitations were not totally credible, (id.); that Plaintiff had the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for at least six hours in an eight-hour workday, stand and/or walk for at least six hours in an eight-hour workday, occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl, and perform simple, routine, competitive, repetitive tasks that require a low degree of concentration consistent with her limitations on a sustained basis over a normal eight-hour workday in a stable work environment with no more than simple decision making, no complex and detailed tasks, no significant close interpersonal

interactions with co-workers, no significant interaction with the public, no exposure to extreme cold or heat or concentrated exposure to fumes, odors, dust, gases, or poor ventilation, (R. at 23); that Plaintiff was unable to perform any of her past relevant work, (id.); that Plaintiff had the RFC to perform a significant range of light work, (id.); that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy, (R. at 22-23); and that Plaintiff was not under a "disability," as defined by the Act, at any time through the date of the decision, (R. at 23).

**Errors Claimed**

Plaintiff claims that the ALJ's decision is not supported by substantial evidence. Plaintiff specifically contends that the ALJ's determination of her RFC was erroneous because he: 1) failed to consider her statements to the Social Security Administration ("SSA") and to her doctors regarding her sensitivities and symptoms; 2) wrongly rejected psychological testing performed at her attorney's request; 3) misconstrued psychiatric evidence; 4) failed to mention Plaintiff's anxiety/panic disorder; 5) rejected all RFC assessments contained in the record; 6) determined Plaintiff's RFC based on his own lay opinion and failed to seek an opinion from a medical or psychiatric expert. See Plaintiff's Memorandum in Support of Her Motion for Summary Judgment ("Plaintiff's Mem.") at 14.[5]

[5] Plaintiff's memorandum fails to comply with the Local Rules. Local Rule Cv 7(d)(1) requires that the text of all memoranda in support of motions be doubled spaced and typed in at least 12-point font. See DRI LR Cv 7(d)(1). Several pages of Plaintiff's memorandum are single spaced, and some text is smaller than 12-point. In addition, the pages are not numbered in accordance with LR Cv 5(a)(3). While this last deviation is minor, the former are not. Thus, the Court directs counsel's attention to the requirements of the Local Rules.

## Discussion

### I. Consideration of Plaintiff's Statements

Plaintiff asserts that the ALJ failed "to consider the repeated consistent statements of the [P]laintiff to the Social Security Administration and to her doctors regarding her sensitivities and her symptoms ...." Plaintiff's Mem. at 14. The Court disagrees.

The ALJ thoroughly reviewed the medical evidence in his decision. (R. at 15-19) In the course of discussing that evidence, the ALJ repeatedly cited statements made by Plaintiff. (R. at 15-20) In particular, in evaluating Plaintiff's credibility, the ALJ considered Plaintiff's statements in light of the evidence in the record. (R. at 20) The ALJ noted that Plaintiff had not been compliant with medication and that this impaired her treatment and adversely affected her credibility. (Id.) In this regard, the ALJ noted that Plaintiff requested Premarin, but then failed to take it. (R. at 20, 197, 200) This caused Joyce Alves, D.O. ("Dr. Alves"), to counsel Plaintiff that compliance with the medication was important and that if she wanted to stop it for some reason, she should call first. (R. at 198) Similarly, Plaintiff was prescribed Lithium, but she decided not to take the medication because of concern about side effects. (R. at 455-56) She was prescribed Elavil, but did not fill the prescription. (R. at 469) Plaintiff discontinued taking Lipitor and refused diabetes medication. (R. at 201, 412) The ALJ also cited the fact that Plaintiff stated that she had been prescribed many anti-depressants and that she had had a reaction to all of them, but the record reflected that she had only been prescribed a few and did not even try them all. (R. at 20) This observation is supported by the record. (R. at 469) The ALJ also noted that Plaintiff was repeatedly told to exercise and lose weight, which she failed to do. (R. at 20)

An ALJ is not required to discuss every item or piece of evidence. See Lord v. Apfel, 114 F.Supp.2d 3, 13 (D.N.H. 2000) ("[T]he First Circuit has held that an ALJ's written decision need not directly address every piece of evidence in the administrative record.")(citing, *inter alia*, Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 8 (1st Cir. 1982)). The Court is satisfied that the ALJ adequately considered Plaintiff's statements to medical providers and the SSA.

**II. Dr. Parsons' Opinion**

Plaintiff argues that the ALJ "reject[ed] psychological testing performed at the [P]laintiff's attorney's request ...." Plaintiff's Mem. at 14. In a lengthy paragraph, the ALJ discussed the psychological testing performed by John Parsons, Ph.D. ("Dr. Parsons"). (R. at 18-19) The ALJ noted that "Dr. Parsons diagnosed a moderate single episode major depressive disorder and a generalized anxiety disorder with a GAF[6] of 50[7]." (R. at 18) Dr. Parsons opined that Plaintiff would have difficulty maintaining gainful employment on a sustained basis due to the severity and complexity of her psychological problems. (R. at 461) He assessed Plaintiff's functioning in general as moderately to severely impaired. (R. at 462-63)

The ALJ gave limited weight to Dr. Parsons' opinion and explained why he did not fully accept it. (R. at 18-19) First, the ALJ noted that the moderately severe limitations in social functioning which Dr. Parsons found seemed inconsistent with his

[6] "GAF" refers to the Global Assessment of Functioning scale, which considers psychological, social, and occupational functioning on a hypothetical continuum of mental health disorders. See Diagnostic & Statistical Manual of Mental Disorders-Text Revision (4th ed.) ("DSM-IV-TR") at 34.

[7] A GAF of 50 indicates "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34.

assessment that Plaintiff was only moderately limited in her ability to respond appropriately to supervision and co-workers. (R. at 19, 462) The Court agrees that there is an apparent inconsistency in these ratings.

Second, the ALJ observed that the moderately severe restriction of daily activities determined by Dr. Parsons was more restrictive than what was reflected by Plaintiff's testimony. (R. at 19) Support for this observation exists in the record as Plaintiff testified that she drives two or three times a week (although not in congested areas), (R. at 39-40), that she attends Jehovah's Witnesses' meetings at least weekly (R. at 50, 55), that she does "letter writing or phone witnessing ...," (R. at 50), that she cares for her nine year old granddaughter who "always comes over," (R. at 51), and that she goes shopping for groceries with her husband, (R. at 55).

Third, the ALJ noted that Plaintiff had only seen Dr. Parsons once, that his opinion was not that of a treating physician, and that the examination was at the request of Plaintiff's attorney. (R. at 19) The number of times which Dr. Parsons had seen Plaintiff and his status as examining and not a treating source are valid considerations in determining the weight to be given to a source's opinion. See 20 C.F.R. § 404.1527(d). While the fact that the examination was performed at the request of Plaintiff's attorney by itself may not warrant discounting an opinion, the Court declines to fault the ALJ for noting this fact.

Fourth, the ALJ wrote that he:

> has see[n] scores of such arranged consultative examinat[]ions from Dr. Parsons for this firm. None has ever indicated that the claimant could work. Without further confirmation of work related limitations, needs for absences, resting, etc.[,] from the actual treating sources, the [ALJ] attaches limited weight to Dr. [P]arsons['] opinion.

(R. at 19)

Senior Magistrate Judge Robert W. Lovegreen of this Court has used even stronger language in describing an opinion rendered by Dr. Parsons:

> For reasons which escape this Court, except to attempt to create out of whole cloth some basis for disability due to a mental impairment, the plaintiff's counsel referred her client to John Parsons, Ph.D. ... for a psychological assessment. No physician had recommended this referral and this record does not support any claim for disability based upon any mental impairment. Nonetheless, as in many unrelated past matters handled by this counsel, a referral to Dr. Parsons was made just prior to the hearing before the ALJ. And, as in many unrelated past matters in which Dr. Parsons has participated, he stuck to the script and found that the plaintiff suffered from Disorders that "would make it extremely difficult for [the plaintiff] to maintain gainful employment on a sustained basis."

Nield v. Barnhart, CA 03-494LO, slip. op. at 11 (D.R.I. Mar. 29, 2005)(first alteration in original). Magistrate Judge Lovegreen concluded that "[t]his report received and deserved no credibility." Id.

The ALJ also noted that Plaintiff's limitations and symptoms as reported by Dr. Parsons were "in excess of those noted by other sources as well as the claimant's demeanor and activities." (R. at 21) Plaintiff's activities were detailed by the ALJ:

> [Plaintiff] testified she attends Jehovah Witness meetings at least once a week for two hours, listens to meetings on Tuesdays and Thursdays for two hours each, and does work for them for three hours a week. The records also reflect she drives, watches television, listens to music, shares household duties with her family, pays bills, does dishes, socializes with friends, crochets, and decorates houses. She also attained an online certificate in Interior Decorating, which evidences she could concentrate and complete tasks. The alleged frequency, severity, and duration of the panic attacks, anxiety attacks, and asthma attacks is not

> supported by the weight of the medical evidence to the degree alleged as there is no evidence of panic attacks or hospitalizations/emergency visits.

(R. at 20)

In sum, the ALJ gave limited weight to Dr. Parsons' opinion because: 1) it was internally inconsistent and inconsistent with other evidence in the record; 2) Dr. Parsons had only seen Plaintiff once and he was not a treating source; and 3) Dr. Parsons has a history of providing similar reports in other disability cases. These reasons are amply supported by the record. Plaintiff's claim of error on this ground is, therefore, rejected.

**III. Treating Psychiatric Evidence**

Plaintiff asserts that the ALJ "misconstrue[d] treating psychiatric evidence that indicates the [P]laintiff is not able to function sufficiently to work and is supportive of psychological testing results ...." Plaintiff's Mem. at 14. As an initial matter, the Court notes that Plaintiff does not cite to the page(s) of the ALJ's decision where he allegedly misconstrued this evidence. See id. In fact, Plaintiff does not even identify the psychiatric evidence to which she is referring, and she provides no citation to the record where this evidence can be found.[8] See id. Thus, Plaintiff's memorandum fails to comply with Local Rule CV 7(d),[9] and the Court would be justified

[8] Plaintiff's subsequent reference to the medical records regarding her psychiatric condition "previously discussed ...." Plaintiff's Mem. at 14, is of little assistance to the Court. The discussion is spread over fives pages (three of which are single spaced) and requires that the Court sift through numerous lines of text in an effort to identify the records to which Plaintiff is referring on page 14.

[9] Local Rule LR Cv 7(d) provides in relevant part:

> **(4) Record Citations in Administrative Appeals.**
>
> Any memorandum filed in a case involving an appeal from the

in finding that Plaintiff has waived argument on this point. See Sunoco, Inc. v. Makol, 372 F.3d 31, 39 (1st Cir. 2004)(finding argument waived where argument was not seriously developed and no citation to the relevant law or the record was provided); Conto v. Concord Hosp., Inc., 265 F.3d 79, 81-82 (1st Cir. 2001) (stating that where brief submitted by Plaintiff failed to cite to any record fact material to a factual inquiry the "claim must be deemed waived"). In this instance, the Court will overlook Plaintiff's omission. However, Plaintiff's counsel is advised that in the future the Court may not be as indulgent.

Presumably, the treating psychiatric evidence which Plaintiff has in mind is that from Angell Street Psychiatry, (R. at 465-478), and Michael Posternak, M.D. ("Dr. Posternak"), at the Rhode Island Hospital Department of Psychiatry, (R. at 489-94). The records from Angell Street Psychiatry are those of D. Kroessler, M.D. ("Dr. Kroessler"), and Connie DiLeonardo, Ph.D. ("Dr. DiLeonardo"). The ALJ discussed the findings and observations of both of these individuals, (R. at 18), and he noted that neither Dr. Kroessler nor Dr. DiLeonardo gave any "indication they felt that the claimant was unable to perform full time competitive work," (id.). Plaintiff does not identify any portion of the RFC determined by the ALJ as allegedly being inconsistent with the opinions of either Dr. Kroessler or Dr. DiLeonardo. See Plaintiff's Mem.

The ALJ also discussed the records from the Rhode Island Hospital Department of Psychiatry. (R. at 19) Although he did not identify the examiner (Dr. Posternak) by name, the ALJ noted that "[t]he examiner opined multiple sensitivity syndrome

---

> ruling or determination of an administrative tribunal, including but not limited to Social Security disability determinations, shall include all pertinent citations to the administrative record.

D.R.I. LR Cv 7(d)(4).

(somatoform disorder) with a Global Assessment Functioning (GAF) of 45 and in the past year of 80." (Id.) However, the ALJ concluded that "[t]he low GA[F] was obviously based upon the claimant's subjective complaints about her chemical sensitivities because the mental status examination was essentially normal." (R. at 19) This is a fair characterization of what Dr. Posternak's notes reflect. (R. at 489-94) Thus, the Court finds no error in the ALJ's consideration of the evidence from the treating psychiatrists and psychologist.

The record also contains support for the ALJ's determination relative to Plaintiff's mental impairments. A Psychiatric Review Technique form completed on March 16, 2005, by Dr. S. Stone, a Disability Determination Services ("DDS") physician, concluded that Plaintiff's functional limitations were "mild" at most. (R. at 336, 346) Similarly, a May 19, 2005, Psychiatric Review Technique assessment by Kathryn Collins-Wooley, Ph.D., a DDS reviewing expert, indicated that Plaintiff's functional limitations were at most "moderate." (R. at 351, 361) Therefore, there is substantial evidence in the record which supports the ALJ's RFC finding regarding Plaintiff's psychiatric condition.

**IV. Anxiety/Panic Disorder**

Plaintiff next argues that the ALJ "fail[ed] to mention or address Plaintiff's anxiety/panic disorder ...." Plaintiff's Mem. at 14. The ALJ found that Plaintiff has an anxiety disorder and that it is severe. (R. at 14, 23) He devoted an entire section of his decision to "Anxiety/Depression." (R. at 17-19) The ALJ observed that on June 13, 2005, Dr. Kroessler had "diagnosed an anxiety disorder and a panic disorder." (R. at 18) In the same paragraph, the ALJ wrote that Dr. Kroessler had prescribed "Imipramine for anxiety, panic, irritability, mid-insomnia, somatic issues, and dizzy spells." (Id.) Also in that

paragraph, the ALJ noted Dr. Kroessler's October 3, 2005, reference to Plaintiff's "anxiety, jitteriness, and improved coping." (R. at 18, 473) In the long paragraph which addresses Dr. Parsons' testing and opinion, the ALJ refers three times to Plaintiff's anxiety and once to her being anxious. (R. at 18-19)

The ALJ specifically found that Plaintiff "has anxiety and depression with no significant symptoms or limitations." (R. at 21) Notwithstanding this finding, the ALJ appears to have made some allowances for Plaintiff's anxiety in the determination of Plaintiff's RFC by including the requirement of work "in a stable work environment with no more than simple decision making, no significant close interpersonal interactions with co-workers, no significant interaction with the public, and an inability to perform complex and detailed tasks ...." (Id.) In view of the foregoing, the Court finds that the ALJ adequately considered and addressed Plaintiff's anxiety and panic disorder in determining Plaintiff's RFC.

**V. Rejection of Residual Functional Capacity Assessments**

The Court's consideration of this claimed error is again hampered by Plaintiff's failure to identify the residual functional capacity assessments to which she is referring or to cite where in the record they can be found.[10] See Plaintiff's Mem. at 14. The only residual functional capacity assessment which the Court can identify that is inconsistent with the RFC determined by the ALJ is the one provided by Dr. Parsons. (R. at 462-63) However, the Court has already determined that the ALJ did not err by attaching limited weight to Dr. Parsons' opinion.

As for other functional capacity assessments, at the hearing the ALJ twice noted the absence of evidence from a treating source that Plaintiff had functional limitations which would

---

[10] See n.9.

prevent her from working.[11] (R. at 57, 72-73) At the conclusion of the hearing, the ALJ specifically observed to Plaintiff's attorney:

> [W]hat I'm telling you is that in looking at the record from an overall standpoint, while I understand the diagnosis has been made, I don't see any place specifically where any treating source has confirmed the need for absences once a week or mildly severe limitations in maintaining attention and concentration under Dr. Posternak's, and I certainly don't see where they've specifically stated what chemical sensitivities there would be.

(R. at 73) Although the ALJ gave Plaintiff's attorney the opportunity to provide such evidence, (R. at 73), the ALJ noted that Plaintiff's "attorney failed to provide the requested updated records and a precise functional assessment to support the claimant's subjective complaints ...," (R. at 20).

The ALJ specifically found that the assessments of the state agency physicians, (R. at 327-49, 351-77), were reasonable and adopted them, (R. at 20). There is ample support for this finding in the record. Indeed, the ALJ noted that "there is no

---

[11] Midway through the hearing the ALJ asked Plaintiff's counsel "does anyone indicate that the claimant has more than moderate limitations in any area until the consultative examination [by Dr. Parsons] in March 2006?" (R. at 57) Shortly thereafter, the ALJ stated:

> I don't really [see] others specifically indicating if the claimant has specific functional limitations physically or mentally. Perhaps I'm missing something and **I'm giving you the opportunity to point out to me if someone else has indicated that she couldn't work.**

(R. at 57)(bold added) The ALJ wrote in his decision, "the attorney conceded there was no indication that the DDS determinations were incorrect prior to March of 2006 [the date of Dr. Parsons' consultative evaluation] ...." (R. at 21) After reviewing the record, the Court finds that the ALJ fairly characterized Plaintiff's counsel's response. (R. at 58)

precise residual functional capacity from a treating physician to rebut the DDS determinations." (Id.)

**VI. Determination of RFC by ALJ**

Plaintiff asserts that the ALJ "arrive[d] at his own estimation of the [P]laintiff's residual functional capacity based on his own lay opinion and fails to seek expert opinion by a medical or psychiatric expert." Plaintiff's Mem. at 14. The Court rejects this contention. As already noted, the ALJ found that the assessments of the state agency physicians were reasonable, and he adopted and incorporated those assessments into his findings. (R. at 20) At the hearing, Plaintiff's counsel was unable to cite to anything in the record prior to the March 30, 2006, consultative evaluation which indicated that these assessments were unreasonable. (R. at 57-58) To the extent that the ALJ imposed some restrictions or limitations which were not included in the DDS determinations, the Court views this action as giving Plaintiff the benefit of the doubt regarding such restrictions or limitations.

Moreover, the contention that the ALJ somehow erred in not seeking an expert opinion from a medical or psychiatric expert is particularly untenable in this case where Plaintiff's counsel apparently indicated that she would provide updated records and a precise functional impairment to support Plaintiff's subjective complaints and then failed to do so. (R. at 20) The Court draws this inference from the fact that the record reflects that the ALJ identified deficiencies in the evidence, (R. at 57, 72-73), and gave Plaintiff the opportunity to provide the missing evidence, (R. at 72-73), but Plaintiff failed to do so, (R. at 20).

Social Security Ruling ("SSR") 96-6p provides in relevant part that an ALJ must obtain an updated medical opinion from a medical expert in two circumstances:

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *3-4 (S.S.A.). Thus, the decision whether to obtain an updated medical opinion from a medical expert when additional medical evidence is received is left to the ALJ's discretion. See id.; see also Field v. Barnhart, No. 05-100-P-S, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006)("Read in context, this language provides little (if any) foothold for court intervention.").

"The administrative law judge was required by SSR 96-6p to obtain additional consultation only if, in his opinion, either of the two above-described circumstances obtained. In his opinion, neither did. That seemingly is the end of the matter." Field, 2006 WL 549305, at *3 (citing U'Ren v. Apfel, No. 99-35604, 2000 WL 1770631, at *2 (9th Cir. Dec. 1, 2000)(noting that SSR 96-6p "specifies only two *discretionary* circumstances when an ALJ should obtain an updated opinion on equivalence from a medical expert" and that once the administrative law judge concluded that newly submitted evidence was unpersuasive, "he had no obligation to call in another state medical expert to review that evidence")(emphasis in original); Cordovi v. Barnhart, No. Civ.A. 04-3742, 2005 WL 3441222, at *3 (E.D. Pa. Dec. 14, 2005)(noting that pursuant to SSR 96-6p, "[a]n ALJ may, but is not required to[,] obtain expert opinions regarding whether an impairment meets or equals a listing")). Thus, the ALJ did not err in failing to seek an expert opinion.

**Summary**

In summary, the Court finds no error in the ALJ's determination of Plaintiff's RFC. The ALJ considered Plaintiff's statements. Dr. Parsons' opinion is not entitled to more than limited weight for the reasons stated by the ALJ. The ALJ did not err in his consideration of the evidence from the treating psychiatrists and psychologist, and he adequately took into consideration and addressed Plaintiff's anxiety/panic disorder. The RFC determination is supported by the opinions of the DDS reviewing experts, and Plaintiff has not identified any functional capacity assessment in the record (other than Dr. Parsons') with which Plaintiff's RFC is inconsistent.

**Conclusion**

For the reasons stated above, the Court finds that the Commissioners' decision that Plaintiff is not disabled is supported by substantial evidence in the record and is free of legal error. Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion for Summary Judgment be denied.

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
August 28, 2008